STATE OF MISSOURI at the Relation of JOSEPH LIPIC, JR., and EMIL LIPIC, as Executors of the Will and Estate of JOSEPH LIPIC, SR., Deceased, Relators, v. HONORABLE WILLIAM B. FLYNN as Judge of the Circuit Court of the Eighth Judicial Circuit of Missouri, Respondent.—No. 40987.—215 S. W. (2d) 446.

Court en Banc, December 13, 1948.

430

*Charles A. Neumann* and *William Kohn* for relators.

*Cox & Cox* and *Roberts P. Elam* for respondent.

432

[446] ELLISON, J.—Prohibition to represent Judge Flynn of the circuit court, city of St. Louis. The underlying contest is between two estates, each claiming the same assets. Relators, as executors of one estate, challenge Judge [447] Flynn's jurisdiction to entertain a suit against them in the circuit. court for conversion of those assets. That conversion suit was filed by the administratrix of another estate after she had already brought a proceeding against relators in the probate court to discover the same assets, under Sec's 63-67, R. S. 1939, Mo., R. S. A., which latter proceeding is still pending. Relators' theory is that since the two proceedings are essentially the same, and the probate court first acquired jurisdiction of the latter proceeding, therefore the circuit court has no jurisdiction to proceed against them in the conversion suit. The respondent judge [through counsel for the administratrix of the second estate, the real party in interest] disputes this.

The facts in brief are that relators Joseph Lipic, Jr. and Emil Lipic are executors of the will of Joseph Lipic, Sr. who died in 1946. His estate is now under administration in the probate court of St. Louis. In his lifetime he had been the administrator of the estate of Emma Berg Lipic, who died in 1942, and in that estate had inventoried its assets as being only her bank account for about $750.

A year or so after the death of said Joseph Lipic, Sr., Gertrude Wheeler was appointed administratrix d.b.n. of said Emma Berg Lipic's estate, and filed in the probate court in that estate the aforesaid proceeding to discover assets against relators as executors of the estate of Joseph Lipic, Sr. She alleged therein that he had embezzled about $24,000 of the assets of the Emma Berg Lipic estate, consisting of secured promissory notes, bank paper and cash; that he was concealing and withholding them when he died; and that his executors had them in their possession or control. The probate court had heard that case and had it under advisement when this prohibition proceeding was filed against Judge Flynn.

But two days after she had filed that discovery of assets proceeding in the probate court, the said Gertrude Wheeler, administratrix d.b.n. of the Emma Berg Lipic estate, also filed a suit in "conversion" [which we understand to mean trover and conversion] in the circuit court against relators for the same property, where it is pending in the respondent Judge Flynn's division. It is conceded by the parties that the same identical assets actually are involved in both the probate and circuit court proceedings, the principal difference between them being that the probate court proceeding primarily seeks the recovery of those assets in kind in behalf of the Emma Berg Lipic estate, whereas the circuit court case asks a money judgment for their value because of their wrongful conversion.

Relators, as executors of Joseph Lipic Sr.'s estate, first filed in Judge Flynn's court a verified motion to dismiss the conversion suit

on the ground that the probate court had preëmpted jurisdiction of the controversy in the discovery of assets proceeding, and therefore the circuit court had no jurisdiction. Judge Flynn heard arguments and overruled it. Then relators filed a motion asking him to abate that suit awaiting final action in the discovery of assets proceeding, but he overruled that, also, and had set the conversion case down for trial when the present petition for prohibition was filed here.

We here set out Sec. 63 of our statutes on which the probate proceeding was based. [Sec. 67 makes Sec. 63 applicable not only to proceedings brought *by* executors and administrators, but also to those brought *against* them, as here.] The words we have first italicised therein were added by Laws Mo. 1881, p. 32. The words next italicized were added in 1 R. S. 1855, p. 130, § 7, with a footnote: "This section has been amended to meet the case of Dameron's Administrator v. Dameron, 19 Mo. Rep. 317." The statute is as follows:

"If the executor or administrator, or other person interested in any estate, file an affidavit in the proper court, stating that the affiant has good cause to believe and does believe that any person has concealed or embezzled, *or is otherwise wrongfully withholding* any goods, chattels, money, books, papers or evidences of debt of the deceased, *and has them in his possession or under his control*, the court may cite such person to appear before it, and compel such appearance by attachment."

[448] Counsel for the respondent Judge Flynn and Gertrude Wheeler, adm'x, respectively, both concede that probate courts have exclusive jurisdiction of statutory proceedings to discover assets under Sec's 63, 67, supra. But the former contend such proceedings are special and will not lie unless the relators were in *possession* of the assets in controversy when and before the affidavit was filed; and they assert first that relators' petition for prohibition here does not so allege.

It is true that the prohibition petition does not allege as an independent fact that relators were in possession of the disputed assets when the affidavit of Gertrude Wheeler, adm'x d.b.n. was filed in the probate court. But it does allege the *affidavit* charged relators then had the disputed assets "in their possession or under their control." That allegation in the affidavit followed the statute and was enough to give the probate court jurisdiction of the discovery of assets proceeding. The parties could not litigate on the *merits* in the prohibition proceeding as to whether relators in fact had possession of those assets. The only question in that proceeding would be whether the probate court on the face of the affidavit had acquired exclusive jurisdiction of the controversy in the discovery of assets proceeding before the conversion suit was filed in the circuit court. We rule that point against respondent.

Next respondent's counsel contend that such statutory proceedings for the discovery of assets are special and summary, and are not preclusive as against other legal remedies open to the executor, administrator or other claimant in the circuit court, such as trover and conversion, citing Niederberg v. Golluber (Mo. Div. 1) 162 S. W. (2d) 592, 597(3). And in that connection respondent's counsel further cite Barnes v. Boatmen's Nat'l Bank, 355 Mo. 1136, 1142(2), 199 S. W. (2d) 917, 919-20(1), where it is held that many claims against estates may be established in the circuit court under Sec's 183, 184, 188, 208, R. S. 1939, Mo., R. S. A., as well as in the probate court.

That may be conceded, but the question here is not whether alternative remedies were available to Gertrude Wheeler, adm'x. On the contrary it is whether she could elect to adopt the probate court route by a discovery of assets proceeding; next, bring a suit for conversion involving the same property in the circuit court while the first proceeding was and still is pending; and then prohibit the circuit court from going forward with the conversion suit on the ground that the probate court has preëmpted jurisdiction of the controversy in the first proceeding.

On that question respondent's counsel do not complain that Gertrude Wheeler had control of her conversion suit and could have dismissed it; or that having filed it she is estopped to keep the case standing on the circuit court docket and still deny the court has jurisdiction to entertain and go forward with it. Under Sec's 37, 38, Civil Code, Laws Mo. 1943, p. 370, Sec's 847.37, 847.38 Mo., R. S. A. a party may join alternative or successive claims in one petition, but Sec. 2 of the Code, Laws Mo. 1943, p. 357, Sec. 847.2 Mo., R. S. A. does not make the Code applicable to proceedings in a probate court or to causes pending in separate courts. As these points are not raised we do not attempt to decide them.

The distinction which respondent's counsel seek to draw in support of their contention, is this. They say a discovery of assets proceeding in the probate court can be maintained only when the disputed assets were in the possession or under the control of the party charged (relators here) at the time of the institution of the proceeding by the filing of the affidavit. And a recovery of the *possession* of the disputed assets must be sought. On the other hand, they point out that an action in trover and conversion is not for the recovery of the specific property, but waives the wrongful appropriation thereof, as such, and seeks a money judgment for its value. And it is contended this difference in the two proceedings entitled Gertrude Wheeler, adm'x to maintain both proceedings at the same time in different courts.

On the necessity of actual possession and recovery thereof, respondent's counsel cite three early decisions[1] of this court, one of

---

[1]Dameron's Adm'r v. Dameron, 19 Mo. 317, 318; Howell, Ex'r. v. Howell, 37 Mo. 124, 126; Stewart v. Glenn, Adm'r, 58 Mo. 481, 489(4).

[449] them being the Dameron case, decided in 1854 and referred to in the eighth preceding paragraph hereof. That case did so hold, on the grounds that Sec. 63 [then § 9, p. 74, R. S. 1845] and other cognate sections required a concealment or embezzlement of the disputed assets, and made the party charged subject to attachment and imprisonment if he failed to surrender them upon a finding against him. It was reasoned that this made the statutes criminal or penal in nature, and that no remedy so harsh could have been intended to apply to a party who *actually* did not have the disputed assets in his possession and consequently could not surrender them and avoid imprisonment. Having thus defined the narrow scope of the proceeding, the decision went on to say that "all other remedies for the recovery of the effects from the hands of the person detaining them were open to the executor or administrator," notwithstanding this probate statute. Respondent's counsel stress that provision in their brief.

. Undoubtedly this Dameron case prompted the amendment of the statute the next year by the insertion therein of the clause "and has them in his possession or under his control", as shown by the footnote thereto mentioned in the ninth preceding paragraph. The case was followed on all or some points decided thereby: in 1865 in Howell's Ex'r. v. Howell, supra;[1] and in 1874 in Stewart v. Glenn, Adm'r., supra,[1] which was a proceeding to discover assets brought against an administrator. But later the law was changed.

Remembering that for many years the statute (Sec. 63) applied only to assets which had been "concealed or embezzled" [though by the 1855 amendment it was also required that the party charged have them "in his possession or under his control"] the question later arose whether it (the statute) applied only to a criminal appropriation of assets, or covered also a withholding on an honest claim of title as against the estate. This question was mooted in several cases.[2] In the first Eans case, begun in 1878 under the then statute, it was held that the probate court could try the rights of property in a discovery of assets proceeding. That case was not decided until 1883, but during its pendency Sec. 63 was amended in 1881, as stated early in this opinion, by the insertion òf the phrase "or is *otherwise* wrongfully withholding" (italics ours), after the words "concealed or embezzled." That change was held in the Gordon-Eans case,[2] decided in 1888, to cover a non-criminal withholding of assets, and the law was settled in the Huffman and Clinton cases that the probate court can try the mere title to the disputed assets in a discovery of assets proceeding, thus eliminating criminality as a necessary element in the

[2]Eans v. Eans, 79 Mo. 53, 63(1); Gordon v. Eans, 97 Mo. 587, 605, 614, 4 SW. 112; 11 SW. 64, 67, 370; Tygard v. Falor, 163 Mo. 234, 241, 63 SW. 672, 673(1); In re estate of Huffman, 132 Mo. App. 44, 58-63, 111 SW. 848, 854; Clinton v. Clinton, 223 Mo. 371, 383-8(3), 123 SW. 1, 4-5(2).

taking or holding of the property—which was one of the reasons that impelled the early Dameron decision to hold as it did.

Furthermore, in the Revision of 1879, the then sections 76 and 78, now Sec's 64 and 66, were amended so that Sec. 64 now provides if the party charged and cited does not admit the allegations of the initial affidavit, he shall: (1) be examined (orally) under oath; (2) after which, at the instance of the party making the charge, other witnesses pro and con may be examined on written interrogatories, to be answered in writing by the party charged. And Sec. 66 provides the issue on the interrogatories and answers thereto shall be tried in a summary manner, "and judgment shall be rendered according to the finding and for costs." The statute goes on to say that if the party cited be "convicted", the court shall compel him to deliver the disputed property, by attachment of his person or contempt, and he shall be committed to jail until he comply with the order for delivery.

These statutes have been held revolutionary in nature and fundamental. They provide both a proceeding for discovery of [450] the assets, and an independent summary proceeding for the recovery thereof. But the issues now are not confined to those tendered in the initial affidavit. On the contrary they are made by the more detailed written interrogatories and answers thereto, and may take a wider scope and broaden the issues. Trautmann v. Trautmann, 300 Mo. 314, 319-21(2), 254 SW. 286, 287-8(1); In re Weingart's Estate, 170 SW. (2d) 972, 976-8(1). This brings up the question whether a discovery of assets proceeding in the probate court under our present law is, or may be, substantially the same as a suit in trover and conversion for the value of the same assets so that it can be said Gertrude Wheeler, adm'x, is attempting here to maintain at the same time two suits with the same objective in different courts.

Since the foregoing amendment of Sec's 64 and 66 in 1879, at least five decisions of this court and the St. Louis Court of Appeals have dealt with the question whether the judgment and order of the probate court against the party cited in a discovery of assets proceeding, can only award delivery of the disputed property in specie or may render a money judgment for its value. The Huffman case, supra, 132 Mo. App. l. c. 63-4(3), 111 SW. l. c. 854(3), decided in 1908, conceded such a proceeding would not reach assets which had been disposed of before the filing of the affidavit; but held if that occurred afterward a money judgment could be rendered for the amount received therefor, under an affidavit alleging in the alternative the withholding of the assets or the proceeds therefrom. Newell v. Kern (Mo. App.), 218 SW. 443, 446(3), decided in 1920, broadly held that under Sec's 64 and 66, supra, the former doctrine requiring a judgment against the party cited to be for the specific property, had been discarded—citing the Huffman case.

In Davis v. Johnson, 332 Mo. 417, 423(8), 58 SW. (2d) 746, 748-9(9), decided in 1933, the interrogatories related (quoting substantially) to money or other personal property in possession, and if not, to the disposition made thereof. The decision held: "We see no reason why a trial may not be had in which the title to such property would be determined, or why upon a refusal of the appellant to deliver the same, the attachment feature might not be disregarded and a judgment for the value thereof entered *as for conversion* (italics ours), or other judgment suitable to the finding and not involving commitment (to jail) . . ."

And Lolordo v. Lacy, 337 Mo. 1097, 1111(6), 88 SW. (2d) 353, 361, said: "This court has held (as have the Courts of Appeals) that, where specific personal property of an estate has been sold and the proceeds deposited in the bank of the seller, the summary proceeding to discover assets is a proper remedy to compel him to pay the amount of the proceeds to the estate, and that this remedy is not 'confined to a particular fund—the actual money which belonged to the decedent.' [citing five decisions] For the origin and amendments of this remedy see"—citing the Trautmann case, supra. All these decisions are reviewed and followed in the Weingart case, supra.

Under these decisions and others referred to therein, it is our opinion that the title to the disputed assets may be tried by the probate court in a discovery of assets proceeding; and that a money judgment for the value thereof may be rendered if the party cited is found to have disposed of them for money after the institution of the proceeding by the filing of the affidavit pursuant to Sec. 63. Indeed, under the Davis case, supra, we think that even if the relators here still retain possession of the disputed assets, and refuse to surrender them, Gertrude Wheeler, adm'x, may *waive* the attachment or punitive feature of the statute, Sec. 66, and ask a judgment for the value of the assets "as for conversion" in the discovery of assets proceeding.

Nevertheless, the Davis case further holds [332 Mo. l. c. 424(9), 58 SW. (2d) l. c. 749(10)] that an action in trover and conversion will not lie against the estates of deceased persons, because it is a mere *possessory* action in which the question of title is not primarily involved. The decision has not been cited since on that point, and would seem to run counter to the [451] holding in the early Dameron case, supra,[1] that a discovery of assets proceeding is special and summary, and triable only in the probate court, but that "all other remedies" [some in the circuit court, such as conversion] are open to the executor or administrator. The fact is that an executor or administrator has the legal title to the estate personalty and the right to possession thereof during the pendency of the administration until distribution is ordered. It is his duty to collect and defend it, in court

if necessary,[3] except where the controversy is personal to the distributees inter sese or otherwise. And his status as such will authorize him to bring a suit in conversion for estate personalty.[4]

As to the holding in the Davis case, supra, that trover and conversion is a mere possessory action, in which the question of title is not primarily involved, it is true that while in some jurisdictions the action is founded on the ownership of the property by the plaintiff, 53 Am. Jur., p. 859, § 66; 65 C. J., p. 56, § 92, yet in this state mere ownership alone is not enough to support the action. Here, he must have had or been entitled to immediate possession at the time of the conversion and thereafter when the suit is brought.[5] But in the absence of anything to the contrary, ownership carries with it the right to immediate possession. And the facts imported by the record in this case are that the controversy is on the question of ownership, the fact being conceded that the right to possession follows the title. This we say though the interrogatories in the probate court have not been brought up.

That being true, it seems to us the proceeding in the probate court to discover assets, and the action for conversion in the circuit court are parallel and do or may involve the same issue and seek the same relief at the option of Gertrude Wheeler, adm'x d.b.n. who instituted both. As the Davis case says, she can in the probate court ask a money judgment *as for conversion*, as the administrator did in the Niederberg case, supra, 162 SW. (2d) l. c. 597(3). At the same time she is also directly seeking that relief in the circuit court. The circuit court is encroaching on the jurisdiction of the probate court, which is summary and exclusive, on what really is the same cause of action. From this it follows that our preliminary rule in prohibition should be made absolute. It is so ordered and adjudged on authority of such cases as State ex rel. Burtrum v. Smith, 357 Mo. 134, 140-1(2), 206 SW. (2d) 558, 562(4); State ex rel. Bartlett v. Littrell, 325 Mo. 35, 40(3), 26 SW. (2d) 768, 770(7); State ex rel. Sullivan v. Reynolds, 209 Mo. 161, 188(7), 107 SW. 487, 495(7); State ex rel. Aetna Life Ins. Co. v. Knehans (Mo. App.) 31 SW. (2d) 226, 228(2). See also 50 C. J., p. 667, §§ 21, 22; 42 Am. Jur. p. 161, § 24, text to note 6.

Writ absolute. All concur.

[3]In re Estate of Messersmith, 264 Mo. 610 618(1); Love v. White, 348 Mo. 640, 643(2), 154 SW. (2d) 759, 760(2, 3); State ex rel. St. Louis Union Trust Co. v. Sartorius, 350 Mo. 46, 56(2), 164 SW. (2d) 356, 358(3, 4); Odom v. Langston, 351 Mo. 609, 624(11), 173 SW. (2d) 826, 835(27).

[4]Blum, Adm'r.d.b.n. v. Frost, 234 Mo. App. 695, 116 SW. (2d) 541; Polk's Adm'r. v. Allen, 19 Mo. 467; Duncan's Admr. v. Fisher, 18 Mo. 403.

[5]St. Louis Catering Co. v. Glancy, 294 Mo. 438, 456(1), 242 SW. 392, 396(1); Sebastian County Coal & Mining Co. v. Fidelity Fuel Co., 310 Mo. 158, 170(1), 274 SW. 774, 777(3).